CAROL BOOTH, trustee[1,2] *vs.* WILLIAM G. KORNEGAY & others.[3] August 19, 2008. *Trust,* Reformation. *Taxation,* Trust.

The trustee of the Trust Indenture of Kent W. Frederickson (trust) commenced this action in the Probate and Family Court seeking reformation of the trust in order to effectuate the settlor's alleged intent to minimize taxes on his estate. The defendants are certain named beneficiaries, who have all assented to the proposed reformation, as well as the Internal Revenue Service, which has neither appeared nor participated in the case. A judge in the Probate and Family Court, after allowing the trustee's motion to waive appointment of a guardian ad litem, purported to allow the reformation and then reported the case to the Appeals Court.[4] We granted the trustee's application for direct appellate review and, after reviewing the record, requested additional information from the trustee regarding the type of trust intended by the settlor as well as the institutional beneficiaries named in the trust. Having now received and reviewed that information, we conclude that the trust should be reformed to conform to the settlor's intent.

*Facts.*[5] The settlor established the trust in January, 1995; he died on October 1, 1999. As settlor, he directed that, on his death, the trust assets be divided into two separate funds, the first to be held for the benefit of Chester O. Frederickson, for his lifetime (Frederickson fund), and the second for the benefit of William G. Kornegay, for his lifetime (Kornegay fund). Article III of the trust states that the Frederickson fund was to pay Chester Frederickson "all or as much of the annual net income and any previously accumulated undistributed income . . . as the Trustee . . . shall determine to be necessary or desirable to provide . . . a proper level of support, health, welfare and personal enjoyment."

The trust further provides that on the death of the last to die between the settlor and Chester Frederickson, the trustee is to pay from the Frederickson fund to the settlor's three nieces and nephew (lifetime beneficiaries) "so much of the annual net income and any previously accumulated undistributed income of the [Frederickson fund] as the Trustee . . . shall determine to be necessary

[1]Of the Trust Indenture of Kent W. Frederickson.

[2]The estate has moved to substitute Carol Booth as trustee because the original trustee resigned after being appointed to a Massachusetts judgeship. See S.J.C. Rule 3:09, Canons 4E and 6B, as appearing in 440 Mass. 1323, 1337 (2003). The motion is hereby allowed.

[3]Chester O. Frederickson, Loretta Frederickson-Kline, Jon Frederickson, Theresa Frederickson Lucas, American Civil Liberties Union, Greenfield Community College, and the Internal Revenue Service.

[4]Although the probate judge stated that he was allowing the reformation and reporting the case to the Appeals Court, the applicable law does not authorize a judge to report a case that has been finally decided in the trial court. *Riley* v. *Riley*, 434 Mass. 1021, 1022 n.5 (2001). We decide the case despite the error. *Id.*

[5]We typically require assent by the beneficiaries to both the reformation and the specific facts. See *Sheinkopf* v. *Bornstein*, 443 Mass. 1012, 1013 n.5 (2005). Although there is no assent to the facts by the beneficiaries in this case, "[t]he omission . . . is not fatal" here. *Ryan* v. *Ryan*, 447 Mass. 1003, 1004 n.5 (2006). We do, however, "once again 'remind litigants and attorneys bringing trust reformation cases before this court of their obligation to provide "a full and proper record and the requisite degree of proof that they are entitled to the relief they seek." ' " *Id.*, quoting *Holden* v. *Holden*, 437 Mass. 1004, 1004 n.4 (2002).

or desirable to provide a proper level of support, health, welfare and personal enjoyment for [the lifetime beneficiaries]." On the death of the settlor, Chester Frederickson, and any one of the named lifetime beneficiaries, the Frederickson fund is to be divided into three equal parts, with one part to be distributed outright, in equal shares, to the American Civil Liberties Union (ACLU) and Greenfield Community College. The remaining two parts are to be held by the trustee for the benefit of the two surviving lifetime beneficiaries. On the death of the settlor, Chester Frederickson, and two of the lifetime beneficiaries, the fund is to be divided into two parts, one part to be distributed outright, in equal shares, to the ACLU and Greenfield Community College and the other part to be held for the benefit of the surviving lifetime beneficiary. Finally, on the death of all individual named beneficiaries, the remaining assets of the fund are to be distributed outright, in equal shares, to the ACLU and Greenfield Community College. Additionally, the trustee is directed to administer the Kornegay fund in like fashion, for the benefit of the same beneficiaries, with one exception not relevant here.

Affidavits submitted by the original trustee, who drafted an earlier version of a will and trust for the settlor, and one of the individual beneficiaries indicate that the settlor was both charitably inclined and generally aware of estate and gift tax issues. According to the original trustee, the settlor wished to construct his estate so as to be able to take advantage of tax laws for charitable remainder trusts. To do so, the trust must comply with Internal Revenue Code (I.R.C.) § 664, which sets forth the requirements for charitable remainder trusts. Section 664 requires, among other things, that the lifetime interests be for a fixed sum certain or for a fixed percentage. I.R.C. § 664(d). Because the trust, as currently drafted, provides for the trustee to determine, in her discretion, what portion of the annual net income to distribute to the individual beneficiaries, however, rather than for distribution of a sum certain or a fixed percentage, it does not qualify as a charitable remainder trust under § 664. The settlor's estate will, therefore, incur a greater estate tax because it will not be able to claim a charitable deduction. If the trust is reformed with terms that qualify the trust as a charitable remainder trust under § 664, the estate could then take the estate tax charitable deduction.

Although it was unclear from the original proposed reformation and accompanying papers whether the trustee was seeking, through reformation, a charitable remainder annuity trust (CRAT) or a charitable remainder unitrust (CRUT), the additional information provided, on the court's request, makes clear that the trustee seeks to reform the trust to meet the requirements of a CRAT. Pursuant to I.R.C. § 664(d)(1)(A), a CRAT is a trust "from which a sum certain . . . is to be paid, not less often than annually." Here, as reformed, Article III of the trust directs the trustee to pay to the beneficiaries "an annuity amount equal to Seven and Two Tenths Percent (7.2%) of the net fair market value of the assets of the [Frederickson fund] valued as of the date of the SETTLOR's death."[6] In other words, the trust dictates that a fixed amount — 7.2% of the net fair market value of the trust assets as of the date of the settlor's death — be paid to the beneficiaries. A CRUT, on the other hand, requires payment of "a fixed percentage . . . of the net fair market value of [the trust] assets, valued annually." I.R.C. § 664(d)(2)(A). The trustee does

---

[6]As reformed, Article III also directs the trustee to administer the Kornegay fund in the same manner.

not seek, through reformation, a trust that requires an annual valuation of the trust assets or that bases annual payments to beneficiaries on that valuation.

Additionally, the settlor intended to benefit both the ACLU and Greenfield Community College and intended that the trust be distributed to qualifying charities under I.R.C. § 501(c)(3). Neither institutional beneficiary, however, as named in the trust, meets the criteria set forth in I.R.C. § 501(c)(3). A bequest to either institution would not, therefore, be considered a charitable bequest in accordance with I.R.C. § 170(c), and the estate tax charitable deduction would not be available.

Both institutions, however, have foundations — respectively, the American Civil Liberties Union Foundation, Inc. (ACLU Foundation), and the Greenfield Community College Foundation, Inc. (GCC Foundation) — that are organized in accordance with I.R.C. § 501(c)(3), are eligible charitable beneficiaries under I.R.C. § 170(c), and have goals that are consistent with those of the named organizations. An affidavit submitted by the executive director of the GCC Foundation states that the foundation is "dedicated to supporting the mission of Greenfield Community College." The GCC Foundation's articles of organization and bylaws further indicate that the GCC Foundation's goal is to support the college. Similarly, incorporation documents of the ACLU Foundation indicate its goal of supporting, promoting, and defending civil liberties. These too are the goals of the ACLU. Reformation of the trust to reflect the respective foundations as beneficiaries, in addition to the other reforms providing the individual beneficiaries with a fixed sum, would thus allow the trust to qualify as a CRAT under I.R.C. § 664.

*Discussion.* "It is well settled that, as a matter of Massachusetts' law, a trust instrument may be reformed to conform to the settlor's intent." *Walker* v. *Walker*, 433 Mass. 581, 587 (2001), and cases cited. In particular, "[w]e have allowed the reformation of trust instruments which produced tax results that were clearly inconsistent with the settlor's tax objectives." *Id.*, quoting *BankBoston* v. *Marlow*, 428 Mass. 283, 285 (1998). It is sufficiently clear on this record that the settlor intended to create a charitable trust so as to be able to take advantage of certain estate tax deductions. Although he does not appear expressly to have intended one type of charitable trust over another — i.e., a CRAT over a CRUT — an affidavit submitted by the original trustee states her belief that the settlor "would have chosen a [CRAT] because he wanted to establish an annuity for [the beneficiaries]; he wanted them to have a stable and predictable income each year." A CRUT is incompatible with this intent.

Additionally, it is evident that reforming the trust to name as beneficiaries the ACLU Foundation, in place of the ACLU, and GCC Foundation, in place of Greenfield Community College, will satisfy the settlor's intent to benefit Greenfield Community College and the ACLU — the goals of the foundations are consistent with those of the organizations themselves — as well as his intent to take advantage of tax laws for charitable remainder trusts.

*Conclusion.* A judgment shall enter in the Probate and Family Court reforming Article III of the trust as requested in the substitute exhibit G included with the motion to clarify and substitute exhibit G, filed with this court.

*So ordered.*

The case was submitted on briefs.

*Michele J. Feinstein* for the plaintiff.